PEOPLE v POOLE

PEOPLE v DHUE

Docket No. 94564. Argued May 4, 1993 (Calendar No. 2). Decided
September 21, 1993.

Edward A. Poole, Zina R. Dhue, and Kevin Downer were bound
over for trial on charges of first-degree felony murder and
assault with intent to rob while being armed, following prelimi-
nary examination in the 31st Judicial District Court. The
Recorder's Court for the City of Detroit, James E. Roberts, J.,
quashed the information regarding felony murder, but affirmed
the bind over for assault with intent to rob while armed. The
Court of Appeals, MICHAEL J. KELLY, P.J., and JANSEN and
T. J. LESINSKI, JJ., affirmed in part and reversed in part in an
unpublished opinion per curiam, holding that a statement by
Downer inculpating himself and Poole in the killing was not
admissible at trial as substantive evidence against Poole and
Dhue (Docket No. 139161). The people appeal.

In an opinion by Justice LEVIN, joined by Justices BRICKLEY,
BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

The statement at issue satisfies the requirements of MRE
804(b)(3) and the Confrontation Clause.

1. MRE 804(b)(3) provides that a statement that, at the time
of its making, was so contrary to the declarant's interest or
tended to subject the declarant to civil or criminal liability that
a reasonable person would not have made it unless it was
believed to be true may be admitted as an exception to the rule
excluding hearsay. The portion of Downer's statement implicat-
ing himself is admissible as substantive evidence against him.
Although MRE 804(b)(3) does not specifically address the admis-
sibility of the carry-over portions of Downer's statement, i.e.,
those portions inculpating Poole and Dhue, but not him di-
rectly, where, as in this case, a declarant's inculpation of an
accomplice is made in the context of a narrative of events at
the declarant's initiative without prompting or inquiry, and as

REFERENCES

Am Jur 2d, Criminal Law §§ 729, 957; Evidence §§ 610, 617, 618,
620.

See ALR Index under Declarations or Statements; Hearsay.

a whole is clearly against penal interest and, as such, reliable, the whole statement is admissible as substantive evidence at trial.

2. The admission of such a statement as substantive evidence does not violate the Confrontation Clause where the prosecutor can establish that the declarant is unavailable as a witness and the statement bears adequate indicia of reliability or falls within a firmly rooted hearsay exception. Because Downer is being prosecuted for the same offenses as Poole and Dhue and his statement relates to the charges, he may not be called as a witness and, thus, is unavailable. Given the history of the exception, however, it cannot be concluded that it is firmly rooted. In evaluating whether a statement against penal interest that inculpates a person in addition to the declarant bears sufficient indicia of reliability to allow it to be admitted as substantive evidence against the other person, courts must evaluate the circumstances surrounding the making of the statement as well as its content. Favoring admission would be whether the statement was voluntarily given; was made contemporaneously with the events referenced; was made to family, friends, colleagues, or confederates, i.e., to someone to whom the declarant would likely speak the truth; and was uttered spontaneously, at the initiation of the declarant and without prompting or inquiry by the listener. Favoring inadmissibility would be whether the statement was made to law enforcement officers or at the prompting or inquiry of the listener; to minimize the role or responsibility of the declarant, to shift blame to the accomplice, to avenge the declarant, or to curry favor; and whether the declarant had a motive to lie or distort the truth. Courts also should consider any other circumstance bearing on the reliability of the statement. When applied to the statement at issue and the circumstances in which it was made, there were sufficient indicia of reliability to satisfy Confrontation Clause concerns.

Reversed and remanded.

Chief Justice CAVANAGH, dissenting, stated that because the portions of the declarant's statements that implicated the defendant in this crime were not against the declarant's penal interest, they are hearsay and inadmissible under MRE 804(b)(3). Unlike the Federal Rules of Evidence, the Michigan Rules of Evidence do not include a "catch-all" exception that would permit the admission of reliable evidence that is not admissible under any other hearsay exception.

EVIDENCE — HEARSAY — STATEMENTS AGAINST INTEREST — INCULPATION OF ACCOMPLICES — RIGHT TO CONFRONTATION.

Where a declarant's inculpation of an accomplice is made in the

context of a narrative of events at the declarant's initiative without prompting or inquiry, and as a whole is clearly against penal interest and, as such, reliable, the whole statement is admissible as substantive evidence at trial; the admission of such a statement as substantive evidence does not violate the Confrontation Clause where the prosecutor can establish that the declarant is unavailable as a witness and the statement bears adequate indicia of reliability or falls within a firmly rooted hearsay exception.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for the people.

*Stuart G. Friedman* and *David Cripps* for the defendant.

LEVIN, J. Zina Dhue, Edward Poole, and Kevin Downer were bound over on charges of first-degree felony murder and assault with intent to rob while being armed in connection with the 1990 shooting death of Robert Bonanno, the owner of Mack Packing Company.[1]

The Court of Appeals held that the testimony of Andre Berry, a cousin of Downer, concerning a statement Downer made implicating both Downer and Poole in the killing of Bonanno, would be inadmissable at the time of trial as substantive evidence against Poole and Dhue.[2]

The people present a single issue: whether a

---

[1] Dhue and Poole are being prosecuted together. Downer is being prosecuted separately.

Dhue and Poole filed motions to quash the information. The trial judge granted the motions with respect to the felony murder charge only. The Court of Appeals ordered that the felony murder charge be reinstated against Poole, but not against Dhue.

[2] Unpublished opinion per curiam, decided July 28, 1992 (Docket No. 139161).

declarant's noncustodial, out-of-court, unsworn-to statement, voluntarily made at the declarant's initiation to someone other than a law enforcement officer, inculpating the declarant and an accomplice in criminal activity, can be introduced as substantive evidence at trial pursuant to MRE 804(b)(3).[3]

We conclude that the portions of Downer's statement that inculpate Poole and Dhue are admissible.

I

The evidence at the preliminary examination tended to show that sometime between 5:00 and 5:30 A.M. on January 12, 1990, Poole and Downer were in the immediate vicinity of the Mack Packing Plant in Hamtramck to rob the owner, Robert Bonanno, as he was opening for the day. There was also evidence that Zina Dhue, a former employee of Bonanno, helped plan the robbery using her knowledge of Bonanno's procedures and habits, and of the building in which Mack Packing is located. During the course of the robbery attempt, Bonanno was shot in the head at close range.

Andre Berry testified at the preliminary exami-

---

[3] MRE 804(b)(3) provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable person in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

nation[4] that later on January 12, he and Downer
had a conversation during the course of which
Downer said he had "killed somebody" in an at-
tempted robbery in which Poole participated, and
that, when a car pulled up, he told Poole "Come
on, let's go." When the "guy" would not let Poole
go, Downer shot him in the head:

> *Q.* [C]ould you relate to the Court the conversa-
> tion that you had with Kevin Downer about the
> circumstances of this case on that day?
> *A.* Yes, he told me he came in the house and he
> said, "Cuz, I killed a man."
>
> \* \* \*
>
> *A.* He told me, "Cuz, I killed somebody." And I
> said, "Be for real." And he said, "You don't believe
> me," and I asked him what happened, and he told
> me that him and a friend named Eddie, they went
> to Hamtramck to hit a lick [to rob somebody],
> while Eddie was talking to the guy, he was just
> standing there a couple feet away from him and
> the guy went to open the door, Eddie rushed him
> and tried to push him through the door and Eddie
> couldn't get him in the door, so Kevin helped rush
> him and they pushed him in the door. That's when
> Kevin pulled out the gun.
>
> \* \* \*
>
> *Q.* And sir what did he indicate after he and
> Eddie had pushed this man inside his business and
> Mr. Downer pulled the gun happened, what did he
> say happened then?
> *A.* They told him it was a stick up and he was
> still wrestling with them and they knocked him
> down and they tried to get him to open the safe,
> but he wouldn't open it and then a car pulled up,

---

[4] Berry testified as part of an agreement with the prosecutor's office.
In exchange for his testimony, the prosecutor's office agreed to recom-
mend that the sentence he was serving in an unrelated case be
reduced to time served and probation. According to Berry, he initi-
ated communication with the prosecutor's office concerning this mat-
ter by writing a letter offering to testify after he became angry with
Downer in April, 1990.

in the parking lot and he [Downer] told Eddie, "Come on, let's go." And told the guy to let Eddie go and the guy wouldn't let Eddie go so he [Downer] reached around and shot the guy in the head.

Berry added that Downer mentioned there was someone else involved in the attempt to rob Mack Packing—"somebody that Eddie knew."[5]

The Recorder's Court judge ruled that the statement made by Downer to his cousin, inculpating himself and Poole, was properly admitted as substantive evidence at the preliminary examination. The judge said:

> The circumstances in which Downer gave his [statement] attests to its inherent trustworthiness and indicia of reliability. Downer voluntarily and spontaneously confessed to his cousin while he was still under stress from the event. He told a family member, as opposed to a law enforcement officer, of his participation before he became the focus of any suspicion. He therefore had no motive to fabricate or mitigate his own liability. Finally, Downer made no effort to exonerate himself to the detriment of his accomplice "Eddie." Indeed, he clearly placed the greater portion of criminal liability squarely on his own shoulders. For these reasons, that portion of Downer's declaration against interest which inculpates the accused [Poole] was inherently trustworthy and therefore admissible at the preliminary examination in this case.

The Court of Appeals, relying on this Court's decision in *People v Watkins,* 438 Mich 627; 475

---

[5] In addition to Berry's testimony, a bus driver testified that he saw two men force Bonanno into the building and identified Poole as one of those men. Neighbors of Dhue and Poole testified concerning incriminating statements made by them before and after Bonanno was killed.

NW2d 727 (1991),[6] ruled that the portions of Downer's statement to Berry inculpating Poole and Dhue were not admissible as substantive evidence because it was not against Downer's interest to inculpate Poole and Dhue.

For Downer's statement to Berry to be admissible as substantive evidence against Poole and Dhue at trial, the statement must be admissible under the Michigan Rules of Evidence, and admission of the statement cannot be violative of Poole and Dhue's rights under the Confrontation Clause.[7]

We conclude that Downer's statement to Berry satisfies the requirements of MRE 804(b)(3) and the Confrontation Clause, reverse the Court of Appeals and remand for trial.

II

The statement Downer made to Berry is a narrative description of the events of the morning of January 12, 1990. Downer's focus appears to have been describing the course of events and his own actions. The actions and role of Poole and, to the extent she was referred to, Dhue, were mentioned by Downer in the course of describing his own actions, and only insofar as they related to Downer's statement to Berry that he had to kill somebody.

Downer spoke to Berry on his own initiative. Berry did not prompt or encourage him. Nor did

---

[6] The Court of Appeals said that *Watkins* requires a court to ask, "Given everything else that the confessor admitted regarding his own participation in the alleged crimes, was it against his interest also to name and accuse the alleged accomplices and describe their conduct?" Slip op, pp 2-3. The Court said that the statement of the declarant is admissible against the accomplices if the answer to this inquiry is in the affirmative.

[7] US Const, Am VI; Const 1963, art 1, § 20.

Berry inquire concerning the details of the events Downer was describing.

In *Watkins,* this Court considered the substantive admissibility of custodial confessions of co-defendants inculpating the accused. The majority of the Court, in separate opinions, ruled that, on the facts presented, admitting the statements would violate the defendants' right of confrontation.

The factual situation in *Watkins* was significantly different from the situation in this case. In *Watkins,* the confessions were made at the encouragement of the police and information was provided in response to direct inquiry about the events. Two of the *Watkins'* defendants said that they did not want to "take the fall alone." 438 Mich 631, 706. The declarants in *Watkins* had a motive to lie or distort the truth to minimize their roles and potential criminal responsibility. The statements in *Watkins* were thus fraught with unreliability.[8] Such unreliability is not present under the circumstances in which Downer made the statement to Berry in this case.

Downer's statement to Berry is indeed an unsworn, out-of-court statement, that will be offered by the prosecutor to establish the truth of its

[8] As explained in one of the two opinions comprising the majority, such statements are "properly presumed at the outset to be *uniquely* and *especially* suspect and unreliable, much *more* so than typical, run-of-the-mill hearsay." (Emphasis added.) *Watkins,* p 656. See, also, *Lee v Illinois,* 476 US 530, 541; 106 S Ct 2056; 90 L Ed 2d 514 (1986), as quoted in *Watkins,* p 656:

> As has been noted, such a confession "is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. . . . More than this, however, the arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence."

contents: that Poole joined Downer in attempting to rob Bonanno and that Downer fatally shot Bonanno in the course of that attempt. As such, Downer's statement to Berry is clearly hearsay.[9]

MRE 802 provides that hearsay is inadmissible as substantive evidence except as the rules otherwise provide. MRE 804(b)(3) provides an exception for a hearsay statement that "was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability . . . that a reasonable person in his position would not have made the statement unless he believed it to be true."

The portion of Downer's statement to Berry implicating himself was against Downer's penal interests at the time it was made, and tended to subject him to criminal responsibility to the extent that a reasonable person in Downer's position would not have said what Downer is reported to have said to Berry unless it was true. Accordingly, that portion of Downer's statement comes within the exception for declarations against penal interest, and is admissible as substantive evidence against him.[10]

MRE 804(b)(3) does not specifically address the admissibility of the "carry over" portions of Downer's statement to Berry—the portions that inculpate Poole and Dhue, but are not directly against Downer's interest.[11] We turn to the question whether the carry-over portions of Downer's statement to Berry come within the language and

---

[9] MRE 801.

[10] MRE 804(b)(3).

[11] Unlike the Federal Rules of Evidence, the Michigan Rules of Evidence do not contain a "catch-all" exception to the rule against admission of hearsay evidence. See FRE 803(24) and 804(b)(5). And no other exception to that rule applies to the "carry-over" portions of Downer's statement.

purpose of MRE 804(b)(3) so that they are admissible at trial as a matter of the law of evidence.

A witness' perception of persons and events, the clarity and accuracy of the witness' memory, and the lucidity of the witness' description of persons and events are critical in evaluating the credibility of testimony.[12] The law requires that witnesses be present at trial, take an oath of truthfulness and be subject to cross-examination so that their credibility may be properly evaluated.[13] The admission of hearsay evidence is disfavored because it is difficult, if not impossible, for the trier of fact to assess the reliability of hearsay statements or of the hearsay declarant. The trier of fact is unable to view and evaluate the demeanor and manner of the declarant while making the hearsay statement. The hearsay statement has not been vouched and thus the declarant may not have felt the "special obligation to tell the truth" that results from the taking of an oath. Most importantly, there is no opportunity for cross-examination of the declarant regarding the content of the hearsay statement.[14]

Certain exceptions—including one for declarations against penal interest—have evolved that allow the admission of hearsay statements where the circumstances indicate that, unlike general hearsay statements, such statements may be presumed to be reliable.[15] The advisory committee

_____

[12] 2 McCormick, Evidence (4th ed), § 245, p 93.

[13] Id.

[14] Id., § 245, pp 93-95; 5 Wigmore, Evidence (Chadbourn rev), §§ 1361-1362, pp 1-10.

[15] The truth, of course, is that hearsay evidence, ranging as it does from mere thirdhand rumors to sworn affidavits of credible observers, has as wide a scale of reliability, from the highest to the lowest, as we find in testimonial or circumstantial evidence generally, depending as they all do upon the frailties of perception, memory, narration, and veracity of men and women. [McCormick, n 12 supra, § 245, p 96.]

said concerning FRE 804(b)(3), on which MRE 804(b)(3) is modeled:[16]

> The circumstantial guaranty of reliability for declarations against the interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true.

The principal concern of the rule barring the admission of hearsay, together with all the exceptions, is the reliability of the unsworn, out-of-court statement considering its content and the circumstances in which it was made.

Poole, relying on *Watkins,* urges the adoption of a construction of MRE 804(b)(3) that would allow only those portions of a statement that directly inculpate the declarant to be admitted as substantive evidence.[17] We conclude, however, that where, as here, the declarant's inculpation of an accomplice is made in the context of a narrative of events, at the declarant's initiative without any prompting or inquiry, that as a whole is clearly against the declarant's penal interest and as such is reliable, the whole statement—including portions that inculpate another—is admissible as substantive evidence at trial pursuant to MRE 804(b)(3). In reaching this conclusion, we are guided by the comment of the Advisory Committee for the Federal Rules of Evidence concerning FRE 804(b)(3), on which the Michigan rule is modeled:

[16] The only difference between MRE 804(b)(3) and FRE 804(b)(3) is that the Michigan rule refers to a "reasonable person" while the federal rule refers to a "reasonable man."

[17] While *Watkins* implies that statements must be separated so that only those portions that actually incriminate the declarant may be admitted, that portion of *Watkins* was signed by only two justices and, as such, did not constitute the opinion of the Court. Further, *Watkins* is distinguishable from this case for reasons already stated.

> Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. . . . On the other hand, the same words spoken under different circumstances, e.g., to an acquaintance, would have no difficulty in qualifying.

The instant case presents just the sort of situation spoken of that "would have no difficulty in qualifying."

III

Having decided that Downer's entire statement is admissible under MRE 804(b)(3) as substantive evidence against Poole and Dhue as a matter of the law of evidence, we now consider whether admission of Downer's statement violates Dhue and Poole's Sixth Amendment right of confrontation.[18] The United States Supreme Court held:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. [*Ohio v Roberts,* 448 US 56, 66; 100 S Ct 2531; 65 L Ed 2d 597 (1980).]

---

[18] Although we examine the issue of the reliability of the statement separately under the rules of evidence and for the requirements of the Confrontation Clause, we note that one federal court has commented that "There seems little reason to treat the requirement of reliability differently in each context. Such an approach would be needlessly complex, requiring two bodies of case law where one will do." *York v United States,* 933 F2d 1343, 1361 (CA 7, 1991).

Admitting Downer's statement as substantive evidence thus does not violate the Confrontation Clause if the prosecutor can establish that Downer is unavailable as a witness and his statement bears adequate indicia of reliability *or* falls within a firmly rooted hearsay exception.

Because Downer is also being prosecuted for the same offenses Poole is charged with, and the statement at issue relates to those charges, the prosecutor is unable to call him as a witness in this case. Downer is therefore unavailable as a witness.[19]

The prosecutor argues that the exception for statements against penal interest is a firmly rooted hearsay exception and, as such, all such statements meet the requirements for admissibility set forth by the United States Supreme Court in *Roberts*. While the four dissenting justices in *Lee v Illinois,* 476 US 530; 106 S Ct 2056; 90 L Ed 2d 514 (1986), would have ruled that this exception is firmly rooted, the majority declined to adopt that analysis. Considering the history of this exception,[20] and the prosecutor's concession that a case-by-case approach to the determination of reliability is appropriate, there is no need for us to determine whether the exception for statements against penal interest is firmly rooted.

Courts must thus decide case by case whether a statement against penal interest that also incul-

[19] Poole and Dhue do not contest the assertion that Downer is unavailable as a witness.

[20] Initially, declarations against pecuniary and penal interests were recognized and accepted as exceptions to the hearsay rule. In 1844, however, in *The Sussex Peerage Case,* 8 Eng Rep 1034, England's House of Lords declared that the hearsay exception for declarations against interest applied only to declarations against pecuniary or proprietary interests and not to declarations against penal interest. There was widespread criticism of this holding. The Federal Rules of Evidence, adding the exception for declarations against penal interest, were not promulgated until 1972.

pates an accomplice bears sufficient indicia of reliability to provide the trier of fact a satisfactory basis for evaluating the truth of the statement, whether it has particularized guarantees of trustworthiness sufficient to satisfy Confrontation Clause concerns.[21] *Idaho v Wright,* 497 US 805, 822-823; 110 S Ct 3139; 111 L Ed 2d 638 (1990); *Mancusi v Stubbs,* 408 US 213; 92 S Ct 2308; 33 L Ed 2d 293 (1972).[22]

The indicia of reliability necessary to establish that a hearsay statement has particularized guarantees of trustworthiness sufficient to satisfy Confrontation Clause concerns must exist by virtue of the inherent trustworthiness of the statement and may not be established by extrinsic, corroborative evidence. See *Idaho v Wright.* In *Wright,* the Court explained that, " 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances, but we think the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.,* p 819.

[21] Although the prosecutor argues that the declaration against penal interest exception is firmly rooted, he does not argue for a finding of reliability per se. Rather he urges this Court to find that such statements are admissible only if the proper foundation is laid concerning their reliability. This would include a showing that the statements were voluntary, do not diminish the responsibility or role of the declarant, and were not made to shift blame, avenge the declarant, or curry favor. The prosecutor thus, in effect, asks this Court to adopt a case-by-case approach to admissibility.

Poole does not disagree that statements such as the statement at issue are admissible if the prosecutor can satisfy the requirements set forth in *Roberts.* While arguing that such statements should never be admitted because they are not reliable, and asserting that the declaration against penal interest exception is not firmly rooted so as to allow the adoption of a rule of reliability per se, Poole concedes that such statements can be admissible if the prosecutor can make, case by case, an individualized showing of reliability.

[22] Poole asserts that to be admissible, the statement must have sufficient indicia of reliability that cross-examination of the declarant would not add anything. Clearly, this overstates what is required under *Roberts* and *Mancusi.*

In evaluating whether a statement against penal interest that inculpates a person in addition to the declarant bears sufficient indicia of reliability to allow it to be admitted as substantive evidence against the other person, courts must evaluate the circumstances surrounding the making of the statement as well as its content.

The presence of the following factors would favor admission of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates —that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener.

On the other hand, the presence of the following factors would favor a finding of inadmissibility: whether the statement (1) was made to law enforcement officers or at the prompting or inquiry of the listener, (2) minimizes the role or responsibility of the declarant or shifts blame to the accomplice, (3) was made to avenge the declarant or to curry favor, and (4) whether the declarant had a motive to lie or distort the truth.

Courts should also consider any other circumstance bearing on the reliability of the statement at issue. See, generally, *United States v Layton,* 855 F2d 1388, 1404-1406 (CA 9, 1988). While the foregoing factors are not exclusive, and the presence or absence of a particular factor is not decisive, the totality of the circumstances must indicate that the statement is sufficiently reliable to allow its admission as substantive evidence although the defendant is unable to cross-examine the declarant.

Applying these considerations to the statement at issue, we find that Downer's statement to Berry

and the circumstances in which it was made have sufficient indicia of reliability to satisfy Confrontation Clause concerns and to allow its admission as substantive evidence at trial. Downer's statement is clearly against his own interest and contains references to Poole and Dhue only in the context of a narrative description of the events of January 12, 1990, culminating in the shooting of Robert Bonanno. The statement was made to one of Downer's relatives, not to a law enforcement officer. It was made voluntarily, was spontaneous, and was given on the initiative and whim of Downer.

The statement was not prompted by Berry, and he made no inquiry of Downer about the events referenced in the statement. The statement does not minimize Downer's role in the attempted robbery or his responsibility for the murder of Bonanno. Nor does it attempt to shift blame to Poole or Dhue. Downer did not make the statement to avenge himself or to curry favor. There is nothing indicating that Downer had a motive to lie or distort the truth in relating the details of the attempted robbery to Berry. Nor does the record contain any other fact or circumstance weighing against the reliability of Downer's statement to Berry. We conclude that Downer's statement to Berry is admissible as substantive evidence against Poole and Dhue at trial.

Reversed and remanded for trial.

BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with LEVIN, J.

CAVANAGH, C.J. (*dissenting*). The majority holds that the portion of the declarant's statements, naming the defendant as an accomplice in the crime, "come[s] within the language and purpose of MRE 804(b)(3) so that they are admissible at

trial as a matter of the law of evidence."* *Ante,* pp 159-160. The portions of the declarant's statements that implicated the defendant in this crime were not, however, against the declarant's penal interest, and are therefore inadmissible under MRE 804(b)(3). *People v Watkins,* 438 Mich 627, 649-650; 475 NW2d 727 (1991). Accordingly, I respectfully dissent.

I

A statement made out of court and offered for the truth of the matter asserted is hearsay. MRE 801. Hearsay evidence is presumptively unreliable, *Idaho v Wright,* 497 US 805, 821-823; 110 S Ct 3139; 111 L Ed 2d 638 (1990), and, therefore, inadmissible at trial except as otherwise provided in the rules. MRE 802. The rules provide for certain exceptions to the hearsay exclusionary rule, which are "recognized to accommodate situations where the evidence is necessary and where the trustworthiness of the evidence is shown." Comment, *Inculpatory declarations against interest and the Confrontation Clause: A wider spectrum of admissible evidence against co-conspirators,* 48 Brooklyn L R 943, 944 (1982).

One recognized exception to the hearsay rule is MRE 804(b)(3), which provides in pertinent part:

> A statement which was at the time of its making . . . so far tended to subject [the declarant] to civil or criminal liability . . . that a reasonable person in his position would not have made the statement unless he believed it to be

---

\* In so holding, the majority adopts a rule that would permit hearsay statements of third parties to be used as substantive evidence of an accused's guilt as long as the statement "is made in the context of a narrative of events, at the declarant's initiative without any prompting or inquiry, [and] that as a whole [the statement] is clearly against the declarant's penal interest . . . ." *Ante,* p 161.

true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

This Court recently considered the application of this rule in a case involving an accomplice's confession that implicated others in *Watkins.* The lead opinion rejected the notion that statements inculpating others are "admissible under MRE 804(b)(3) simply because they appear within the same confession as statements concededly against the [declarant's] interest . . . ." *Id.,* p 633. After noting that " '[t]he basis of the exception is the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect,' " *id.* at 635, we stated:

> It thus follows by the most elementary logic that our confidence in the trustworthiness of a purported statement against interest extends only insofar as the specific factual assertions contained within the statement are, in fact, against the declarant's interest. [*Id.* at 636.]

Accordingly, we set forth this rule:

> Each factual assertion sought to be admitted under that exception must be viewed as narrowly and specifically as reasonably possible, and the court must separately ask whether *each specific assertion* is so intrinsically against the declarant's interest that a reasonable person would not have said it unless it were true. In other words, to the extent such statements can be logically and reasonably severed and dealt with independently, they should be.
>      . . . . With all such assertions, the inquiry is analytically quite simple: Given everything else

that the [declarant] admitted regarding his own participation in the alleged crimes, was it against his interest *also* to name and accuse the alleged accomplices and describe their conduct? [*Id.* at 646-648. Emphasis added.]

Application of this rule to the facts of this case indicates that the decision of the Court of Appeals should be affirmed. While it was clearly against Downer's penal interest to admit to killing the victim during the attempted robbery, it was not against his penal interest to add that "Eddie [Poole]" was with him and to describe his conduct. Likewise, it was not against Downer's penal interest to state that " 'somebody that Eddie knew' " was also involved in the robbery attempt. Slip op at 4.

II

The majority focuses on the differences between this case and *Watkins,* most notably the absence of governmental involvement. Downer allegedly made the statements to his cousin and not to the police. The statement was made the day of the crime and before any of the defendants were in custody. Downer took most of the blame himself, admitting that he was the shooter. Accordingly, the disputed hearsay statements are arguably reliable. To this, however, I would say that, unlike the Federal Rules of Evidence, there is no "catch-all" exception in the Michigan Rules of Evidence to permit the admission of reliable evidence that is not admissible under any other exception to the hearsay rule. Accordingly, if the statements were not against the declarant's penal interest, then they are inadmissible. Clearly, they were not.

I would affirm the decision of the Court of Appeals.