# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

RECO NATHANIEL SIMMONS,

        Defendant-Appellee.

UNPUBLISHED
March 15, 2016

No.  323081
Wayne Circuit Court
LC No.  13-004236-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

AQUIRE BERNARD SIMMONS,

        Defendant-Appellee.

No.  323162
Wayne Circuit Court
LC No.  13-004236-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

FREDRICK KYLE YOUNG,

        Defendant-Appellee.

No.  323229
Wayne Circuit Court
LC No.  13-004223-FC

---

Before:  TALBOT, C.J., and WILDER and BECKERING, JJ.

PER CURIAM.

-1-

The instant appeals arise out of an armed robbery and murder that occurred in August, 2012. After a joint trial before a single jury, defendant Reco Nathaniel Simmons (Reco) was convicted of second-degree murder,[1] armed robbery,[2] first-degree home invasion,[3] and possession of a firearm during the commission of a felony (felony-firearm).[4] His brother and codefendant Aquire Bernard Simmons was convicted of assault with intent to do great bodily harm less than murder (AWIGBH),[5] armed robbery, and first-degree home invasion. Defendant Fredrick Kyle Young was convicted of first-degree home invasion. We affirm.

## I. FACTS

On August 8, 2012, Michael Montgomery (Montgomery) concocted a plan to rob the home of Melissa Villneff (Melissa). He enlisted the help of Reco and Aquire. These two sought out four additional men to help: Fredrick, Michael Evans (Evans), Felando Hunter (Felando), and Brandon Crawford (Brandon). That evening, Evans drove the group in his Explorer to Melissa's home. When the group first arrived, they noticed a group of young children playing outside, and decided against going forward with their plan at that time. But a short time later, armed with an SK assault rifle, revolvers, and a baseball bat, the men executed their plan.

Evans stayed behind as the getaway driver. Montgomery, who knew that Patrick Villneff was at the house, lured him away by going for a walk with him and Patrick's dog. Fredrick, Felando, Reco, and Aquire entered the house. Apparently to their surprise, Terrance Villneff (Terrance) was inside, playing a video game. One of the men struck him in the face. Armed with the rifle, Felando ordered Terrance to a bedroom in the back of the house. There, Aquire beat him with the baseball bat at Felando's direction. The other men searched the home. Eventually, the men left. But as they did, they noticed that Melissa's father and next-door neighbor, John Villneff, was standing on his porch and calling 911. John had been alerted to the robbery by one of the children, who had seen the men enter Melissa's home. Reco fired a few shots from his revolver toward John, and Felando fired several more with the assault rifle. John was struck by one of these bullets and died shortly after.

## II. DOCKET NO. 323081

In Docket No. 323081, Reco argues that counsel was ineffective for admitting in closing argument Reco was guilty of murder, but only in the second degree. We disagree. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and

---

[1] MCL 750.317. All three defendants were charged with first-degree felony murder, MCL 750.316, assault with intent to commit murder, MCL 750.83, armed robbery, and first-degree home invasion.

[2] MCL 750.529.

[3] MCL 750.110a(2).

[4] MCL 750.227(b).

[5] MCL 750.84.

constitutional law. A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel."[6] But "[b]ecause [Reco] failed to move for a new trial or request a *Ginther*[7] hearing below, our review of this issue is limited to mistakes apparent on the appellate record."[8] "If the record does not contain sufficient detail to support [Reco]'s ineffective assistance claim, then he has effectively waived the issue."[9]

To be entitled to a new trial, Reco "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."[10] "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy."[11] "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight."[12]

At trial, substantial evidence of Reco's involvement in the crimes was presented. This evidence included multiple witnesses who testified that Felando told Demerious Cunningham (Demerious) that Reco shot John, as well as Reco's statement to his aunt, in which Reco admitted firing at John. Recognizing that this evidence would likely result in a murder conviction, defense counsel argued in closing that "the verdict in this case is guilty. But the question is guilty of what? Is it first degree—excuse me. First degree felony murder? Is it second degree?"

Reco now argues that by admitting guilt, trial counsel was ineffective. As the United States Supreme Court has recognized, in cases where a client's guilt is clear, such a strategy may well be reasonable.[13] Given the evidence admitted at trial, which overwhelmingly demonstrated that Reco was a participant in a robbery during which a victim was shot and killed, and moreover, that Reco was likely the shooter, pleading for leniency in the form of a sentence of second-degree murder was a reasonable strategy. It was also successful. Despite strong evidence that Reco was guilty of first-degree murder, the jury convicted him only of second-

---

[6] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

[7] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[8] *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

[9] *Id.*

[10] *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

[11] *Id.* at 52.

[12] *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

[13] See *Florida v Nixon*, 543 US 175; 125 S Ct 551; 160 L Ed 2d 565 (2004) (recognizing that it may well be a reasonable trial strategy to admit guilt to a lesser offense in an attempt to avoid the potential consequences of a finding of guilt of a higher offense).

degree murder, thereby allowing Reco to avoid the mandatory sentence of life imprisonment without parole that would attach to a first-degree murder conviction.[14] We will "not second-guess counsel's trial tactic of admitting guilt of a lesser offense."[15]

Reco also argues that counsel was ineffective for failing to consult with Reco before committing to this strategy. The existing record, however, does not disclose whether counsel did or did not discuss this strategy with Reco. While Reco expressed his dissatisfaction with counsel's closing argument to the trial court, he did not clearly state that counsel proceeded without Reco's knowledge. Further, the trial court's comments, with which Reco agreed, indicated he had spoken with counsel regarding the strong likelihood that he would be convicted, which was the very reason counsel adopted the strategy. And despite the trial court suggesting that an evidentiary hearing would be necessary to resolve the issue, Reco never sought an evidentiary hearing. Thus, counsel was never given the opportunity to explain whether he discussed this strategy with Reco, and the trial court was never given the opportunity to resolve the question. Because the existing record does not support Reco's claim of ineffective assistance of counsel, he has effectively waived the challenge.[16]

### III. DOCKET NO. 323162

### A. JUDICIAL BIAS

In Docket No. 323162, Aquire first argues that he was deprived of a fair trial by comments made by the trial court during voir dire. We disagree. Because Aquire failed to raise any such challenge in the trial court, we review the issue for plain error affecting his substantial rights.[17]

"A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality."[18] "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party."[19] "Furthermore, the party who challenges

---

[14] MCL 750.316(1) ("[A] person who commits . . . first degree murder [] shall be punished by imprisonment for life without eligibility for parole[.]").

[15] *People v Emerson (On Remand)*, 203 Mich App 345, 349; 512 NW2d 3 (1994).

[16] *Id*. We note that Reco does not ask this Court to remand for an evidentiary hearing to resolve the issue. In fact, he takes the opposite position, stating that "an additional determination in the lower court is not needed for review."

[17] *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).

[18] *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015).

[19] *Id*. at 171.

a judge on the basis of bias or prejudice must overcome a heavy presumption of judicial impartiality."[20]

During voir dire, after a potential juror stated that she worked for an attorney, the trial court explained that the jury would be required to follow the law as articulated by the trial court. Aquire claims that the following comment deprived him of a fair trial:

> Thank you very much, and I want all jurors to know this is not an ego thing. It is a legal requirement. The law that I give you is being taken down in writing.

> If we allow you to use the law that somebody told you in the hallway, or at an office party, or anyplace else, a defendant couldn't get a fair trial because then the Court of Appeals could never know what law was used.

Aquire contends that by referencing the possibility of an appeal, the trial court conveyed to the jury that Aquire was guilty and would be pursuing an appeal. Fairly taken in context, the trial court's comment made no such suggestion. The trial court simply explained one reason why it was important that the jury follow the instructions provided by the court. Aquire was not deprived of a fair trial.

## B. STATEMENTS AGAINST INTEREST

Aquire next argues that the trial court violated his due process rights by admitting hearsay statements under the exception for statements against interest.[21] We disagree. "This Court reviews de novo both constitutional claims and preliminary questions of law regarding admissibility of evidence."[22] This Court reviews "the trial court's ultimate decision regarding admissibility of evidence for an abuse of discretion."[23] "An abuse of discretion occurs when [the] trial court's decision is outside the range of principled outcomes."[24]

At the outset, it appears that the parties and the trial court erroneously read our Supreme Court's decision in *People v Taylor*[25] and its effect on the Court's prior decision, *People v Poole*.[26] In *Poole*, our Supreme Court addressed the admissibility of statements against interest

---

[20] *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996).

[21] MRE 804(b)(3).

[22] *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

[23] *Id*.

[24] *Id*.

[25] *People v Taylor*, 482 Mich 368; 759 NW2d 361 (2008).

[26] *People v Poole*, 444 Mich 151; 506 NW2d 505 (1993), abrogated in part by *Taylor*, 482 Mich 368.

under MRE 804(b)(3) and the Confrontation Clause of the Sixth Amendment.[27] The Court first determined that the entire statement at issue in *Poole* was admissible under MRE 804(b)(3).[28] The Court then "consider[ed] whether admission of [the] statement violate[d]" the Confrontation Clause.[29] The Court explained that the statement did not violate the Confrontation Clause if the declarant was "unavailable as a witness and his statement bears adequate indicia of reliability *or* falls within a firmly rooted hearsay exception."[30] The Court declined to determine whether MRE 804(b)(3) was a firmly rooted hearsay exception, and instead, considered whether the statement at issue bore adequate indicia of reliability.[31] The Court turned to several factors to decide the question:

> In evaluating whether a statement against penal interest that inculpates a person in addition to the declarant bears sufficient indicia of reliability to allow it to be admitted as substantive evidence against the other person, courts must evaluate the circumstances surrounding the making of the statement as well as its content.
>
> The presence of the following factors would favor admission of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates—that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener.
>
> On the other hand, the presence of the following factors would favor a finding of inadmissibility: whether the statement (1) was made to law enforcement officers or at the prompting or inquiry of the listener, (2) minimizes the role or responsibility of the declarant or shifts blame to the accomplice, (3)

---

[27] See *Poole*, 444 Mich at 157-166.

[28] *Id*. at 157-162. As it pertained to MRE 804(b)(3), the pertinent question in *Poole* was whether statements made by a declarant implicating another person, but made in a narrative of events also inculpating the declarant, were admissible. *Id*. Poole argued that "only those portions of a statement that directly inculpate the declarant [could] be admitted as substantive evidence." *Id*. at 161. The Court rejected this formulation of MRE 804(b)(3), holding that "where, as here, the declarant's inculpation of an accomplice is made in the context of a narrative of events, at the declarant's initiative without any prompting or inquiry, that as a whole is clearly against the declarant's penal interest and as such is reliable, the whole statement—including portions that inculpate another—is admissible as substantive evidence at trial pursuant to MRE 804(b)(3)." *Id*.

[29] *Id*. at 162.

[30] *Id*.

[31] *Id*. at 163-164.

-6-

was made to avenge the declarant or to curry favor, and (4) whether the declarant had a motive to lie or distort the truth.[32]

In the trial court, the prosecutor argued that these factors weighed in favor of admitting the statements. Each defendant contested the issue, and all focused largely on the question of whether the statements were made sufficiently close in time to the crimes to be considered contemporaneous. The trial court ruled that the statements were contemporaneous, and thus, were nontestimonial and did not implicate the Confrontation Clause. This analysis, based on *Poole*'s formulation of the Confrontation Clause question, was erroneous because *Taylor* has since abrogated that formulation:

> We hold that the portion of *Poole* pertaining to the requirements of the Confrontation Clause is no longer good law because it was premised on *Ohio v Roberts*, 448 US 56; 100 S Ct 2531; 65 L Ed 2d 597 (1980), which has been overruled by *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), and *Davis v Washington*, 547 US 813; 126 S Ct 2266 165 L Ed 2d 224 (2006). Because the hearsay statements in this case were nontestimonial, they do not implicate the Confrontation Clause, *Davis*, supra at 821, and their admissibility is governed solely by MRE 804(b)(3).[33]

On appeal, Aquire similarly looks to the *Poole* "indicia of reliability" factors to argue that the admission of the statements violated his constitutional rights. Specifically, he argues that the statements were not made contemporaneously with the crimes, "were not spontaneous but instead in response to questioning[,]" and that "all of the witnesses had [a] motive to lie regarding the alleged statements as a result of arrests and threats of prosecution by the police." These inquiries are of no relevance to this particular matter.

Rather, as explained in *Taylor*, there are two relevant inquiries to be made when a prosecutor seeks to admit statements under MRE 804(b)(3) that inculpate a defendant: whether the statements are testimonial, implicating the Confrontation Clause, and whether the statements are admissible under MRE 804(b)(3). Here, the statements were not testimonial "because they were made informally to an acquaintance, not during a police interrogation or other formal proceeding, . . . or under circumstances indicating that their primary purpose was to establish or prove past events potentially relevant to a later criminal prosecution[.]"[34] Thus, admission of the statements did not violate the Confrontation Clause.[35]

---

[32] *Id*. at 165.

[33] *Taylor*, 482 Mich at 374.

[34] *Id*. (quotation marks and citations omitted).

[35] *Id*.

It is also clear that the statements were admissible under MRE 804(b)(3), which allows the admission of statements against interest when the declarant is unavailable to testify. Such statements are defined as:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.[36]

Aquire does not argue that the declarants were available, nor was any such claim raised in the trial court. There is no doubt that the statements were against the penal interest of the declarants, such "that a reasonable person in the declarant's position would not have made the statement unless believing it to be true."[37] In every statement, the declarant admitted to recently participating in an armed robbery that resulted in a person's death.[38] The final sentence of MRE 804(b)(3) is of no relevance to this matter, as the statements were not "offered to exculpate the accused . . . ."[39] Thus, there is no need to consider whether "corroborating circumstances clearly indicate[d] the trustworthiness of the statement[s]."[40] Accordingly, the statements were admissible under MRE 804(b)(3).

We note that the factors discussed in *Poole* are not entirely without relevance in Michigan's jurisprudence. In *People v Barrera*, our Supreme Court considered whether statements against the declarant's penal interest, but which tended to *exculpate* the accused, could be admitted by the defendant.[41] In examining MRE 804(b)(3)'s final sentence, i.e., whether corroborating circumstances indicating that such exculpatory statements were

---

[36] MRE 804(b)(3).

[37] MRE 804(b)(3).

[38] We note that Aquire does not make any meaningful argument regarding whether those portions of the statements inculpating him, rather than the declarant, were admissible. And in any event, the entire statements were admissible. This is because the portions of the statements inculpating Aquire were made in the context of a narrative of events, at the declarant's initiative, without prompting or inquiry. See *Taylor*, 482 Mich at 378-379.

[39] MRE 804(b)(3).

[40] MRE 804(b)(3).

[41] *People v Barrera*, 451 Mich 261, 266-267; 547 NW2d 280 (1996).

trustworthy, the Court held that the proper inquiry was to consider the factors stated in *Poole*.[42] *Taylor* addressed the admissibility of *inculpatory* statements,[43] and thus, should not be read as abrogating the relevance of the *Poole* factors when addressing *exculpatory* statements. But here, the statements were purely inculpatory. Thus, the *Poole* factors are of no relevance to this case.

## C. SEVERANCE OF TRIALS

Aquire next contends that the trial court erred by failing to sever his trial from those of his codefendants. Because Aquire did not seek severance in the trial court, we review the issue for plain error.[44]

"There is no absolute right to separate trials, and in fact, a strong policy favors joint trials in the interest of justice, judicial economy, and administration."[45] Whether to hold separate trials is a matter within the trial court's discretion.[46] "Severance is mandated under MCR 6.121(C) only when a defendant provides the [trial] court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice."[47] "The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision."[48]

Aquire made no attempt in the trial court to demonstrate that a joint trial would cause any prejudice; indeed, he never sought a separate trial. He now argues that the failure to hold separate trials prejudiced him in two ways. First, he asserts that, had the trial court held separate trials, evidence of the conduct of his codefendants would not have been admitted against him. Aquire offers no explanation of why witnesses would not have been able to testify to the entire sequence of events that occurred, including the acts undertaken by Fredrick and Reco, at a trial held with respect only to Aquire. Aquire also argues that the statements discussed in the previous issue would not have been admitted at a separate trial. But he similarly offers no reason why these statements could not be admitted against him alone. Aquire cannot simply state a position and leave it to this Court to rationalize the basis for his contention of error.[49] As Aquire

---

[42] *Id*. at 272-276. The Court also explained that additional factors were relevant in instances where "the statement was made to the authorities while the declarant was in custody . . . ." *Id*. at 275-276.

[43] *Taylor*, 482 Mich at 370.

[44] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[45] *People v Bosca*, 310 Mich App 1, 44; 871 NW2d 307 (2015) (quotation marks, brackets, and citation omitted).

[46] *People v Hana*, 447 Mich 325, 331; 524 NW2d 682 (1994).

[47] *Id*. at 346.

[48] *Id*. at 346-347.

[49] *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009).

has not demonstrated that any actual prejudice occurred as the result of the trial court's decision to hold a joint trial, this Court may not reverse.[50]

Aquire also argues that counsel was ineffective for failing to seek severance. Because he has failed to demonstrate the existence of error or any prejudice resulting from the failure to seek separate trials, Aquire's claim of ineffective assistance fails.[51]

## D. SENTENCING ERROR

In his final argument, Aquire contends that the trial court made an independent finding that he was guilty of murder at sentencing, despite the fact that the jury acquitted him of murder. We disagree. Because this error was not raised below, our review is for plain error.[52]

Aquire's argument arises from the following statements of the trial court at sentencing:

> And I am going to stack these. Because if one of those boys had said, no, I'm not going along with this the rest of them might not have, and none of this might have happened. But he's just as responsible for that man's death as everybody else. Although the jury didn't convict him of the Second Degree Murder. As I said, how am I going to – a Robbery Armed and a Home Invasion First Degree, and you don't find – even though the man died during it – you don't find Second Degree Murder. They wanted to give him a break.
>
> And so he will serve the Home Invasion and the Robbery Armed consecutive to each other.

"Although a trial court may not make an independent finding of guilt with respect to a crime for which a defendant has been acquitted, and then sentence the defendant on the basis of that finding, the court in fashioning an appropriate sentence may consider the evidence offered at trial, including other criminal activities established even though the defendant was acquitted of the charges, and the effect of the crime on the victim."[53] Read in context, the trial court did not make a finding that Aquire was guilty of murder. Indeed, the trial court repeatedly acknowledged that the jury had not reached that conclusion. It did, however, consider the fact

---

[50] *Hana*, 447 Mich at 346-347.

[51] See *Trakhtenberg*, 493 Mich at 51 (to be entitled to relief on a claim of ineffective assistance of counsel, a defendant must demonstrate a reasonable likelihood of a different result absent the error); *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

[52] *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005).

[53] *People v Compagnari*, 233 Mich App 233, 236; 590 NW2d 302 (1999) (citations omitted).

that while Aquire had not been convicted of murder, the crimes of which he was convicted nonetheless led to John's death. In doing so, the trial court did no more than consider the criminal activities established at trial and the effect of those activities on the victims, as it was permitted to do.[54] Aquire's argument is without merit.

## IV. DOCKET NO. 323229

In Docket No. 323229, Fredrick raises a single argument: that the prosecutor failed to present sufficient evidence to support his conviction of home invasion. We disagree. "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in a light favorable to the prosecution."[55] We will affirm Fredrick's conviction if the evidence would allow a rational juror to find him guilty beyond a reasonable doubt.[56]

Fredrick challenges his conviction of first-degree home invasion. First-degree home invasion is defined by MCL 750.110a(2), which provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

There was ample evidence that Fredrick participated in the robbery. Terrance testified that several men entered the home, although he could not specifically identify Fredrick as one of these men. However, Fredrick was identified as one of several individuals who traveled to Melissa's home intending to commit a robbery. Montgomery testified that Fredrick's role was to be one of the men who entered the home. Fredrick was identified as having exited Evans's Explorer and heading toward the home with the other participants. And after the robbery, he was one of the men picked up by Evans and driven away from the location. There was also evidence demonstrating that he was in possession of at least some of the items stolen from Melissa's home. Regardless of whether Terrance or any other witness specifically testified to seeing him inside the home, there was more than adequate circumstantial evidence that would allow a rational juror to conclude that he was one of the men who entered Melissa's home. Because

---

[54] *Id.*

[55] *People v Sherman-Huffman*, 466 Mich 39, 40; 642 NW2d 339 (2002).

[56] *Id.*

circumstantial evidence can provide satisfactory proof of the elements of a crime,[57] Fredrick's argument lacks merit.

Affirmed.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Jane M. Beckering

---

[57] *Bosca*, 310 Mich App at 16.