# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PETER LEE PETERSON,

        Defendant-Appellant.

UNPUBLISHED
November 28, 2017

No. 329195
Manistee Circuit Court
LC No. 14-004443-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT SCOTT KNAUSS,

        Defendant-Appellant.

No. 329200
Manistee Circuit Court
LC No. 14-004442-FC

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

The two defendants in this consolidated appeal, Peter Peterson and Robert Knauss, were tried together in a single trial before separate juries. They were each convicted of first-degree premeditated murder, MCL 750.316(1)(a), arising out of the 1995 shooting death of Vincent Adamczak. Both defendants were sentenced to life in prison without the possibility of parole. They appeal as of right, and we affirm.

There was evidence presented at trial that Adamczak had his girlfriend pawn or sell guns owned by Knauss's grandfather, to which she had access, in order to bail Adamczak out of jail, that defendants later rebuked, threatened, and assaulted Adamczak outside of Peterson's home because of what had transpired with the guns, that Knauss's girlfriend at the time, Rose Skrzycki, was present, that Peterson eventually retrieved a rifle from his home and went back outside where he shot and killed Adamczak, that Knauss agreed to dig and dug a hole on the property in which Adamczak was buried, and that defendants later removed and burned Adamczak's body. These events occurred in 1995.

-1-

Skrzycki testified that Peterson shot Adamczak and then told Knauss to dig the hole, with Knauss stating, when the shot was fired, "Pete, what the f**k did you do?" Skrzycki also indicated that perhaps Peterson had said something about digging a hole just before the shooting. The prosecution presented testimony that Knauss had made many statements to others over the years about the murder and disposal of the body, including statements that Knauss himself had killed Adamczak, that Knauss had helped bury and burn the body after Peterson shot Adamczak, and that Peterson had done the shooting, but only after Peterson had indicated that he would shoot Adamczak if Knauss agreed to dig the hole, to which Knauss agreed. Knauss also made statements to the police, wherein he claimed that Peterson had shot Adamczak and that, prior to the shooting, Peterson had commented or asked about Knauss digging a hole, with Knauss agreeing to do so, but with the belief that Peterson was only kidding and not serious about shooting Adamczak. Neither Peterson nor Knauss testified at trial.

## I. DOCKET NO. 329195 – DEFENDANT PETERSON

## A. TESTIMONY OF SKRZYCKI'S ATTORNEY

Skrzycki had made prior statements to authorities that were not consistent with her trial testimony, suggesting in 2008 that Adamczak, whose body had not yet been located, may have gone to Arizona to pan for gold. In 2011, Skrzycki, under an immunity agreement, claimed that Knauss first shot Adamczak, followed by Peterson shooting Adamczak. She later added to her account that she had retrieved the rifle from Peterson's home when told to do so, which concession led to withdrawal of the immunity agreement and Skrzycki herself being arrested and charged with open murder. Subsequently, pursuant to a plea agreement whereby she pled to the offense of accessory after the fact, Skrzycki provided authorities with the version of events that aligned with her future trial testimony. At trial, Skrzycki's attorney testified about the circumstances surrounding the plea agreement and counsel's interactions with and thoughts regarding her client Skrzycki, including her credibility. On appeal, Peterson argues that Skrzycki's attorney improperly testified about prior consistent statements Skrzycki had made to her, that the attorney also improperly vouched for Skrzycki's veracity and truthfulness, and that some of the testimony constituted inadmissible hearsay. As these arguments were not preserved below, Peterson also maintains that his trial attorney was ineffective for failing to object to the testimony.

The prosecution effectively concedes plain error and deficient performance by trial counsel, arguing that Peterson's substantial rights were not affected by the testimony for purposes of plain-error review, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999), and that he did not incur prejudice with respect to the claim of ineffective assistance of counsel, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).[1] We shall proceed on the

---

[1] In *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999), the Michigan Supreme Court recited the applicable review standards when an evidentiary issue is preserved:

> The decision whether to admit evidence is within the trial court's discretion; this Court only reverses such decisions where there is an abuse of

assumption that the trial court plainly erred in allowing the challenged testimony by Skrzycki's attorney and that trial counsel should have objected to the testimony. We conclude, however, that Peterson has failed to establish the requisite prejudice, as necessary to warrant reversal under either plain-error review, *Carines*, 460 Mich at 763-764, or ineffective-assistance review, *Carbin*, 463 Mich at 600.

We first note that, absent the testimony by Skrzycki's attorney, the jury nonetheless had been made fully aware, through other unchallenged testimony, of Skrzycki's plea agreement, her attendant statements that Peterson alone had retrieved the gun and shot Adamczak, and that the plea agreement required her to testify truthfully at trial. Furthermore, Skrzycki's statements to authorities had previously implicated Peterson in the shooting; that part of her versions of the events was unchanged. Thus, assuming that the attorney possibly and improperly swayed jurors to conclude that Skrzycki's trial testimony was credible, had the attorney not testified, leaving the jurors open to perhaps finding Skrzycki more credible as to her earlier account of what had transpired, this account still had Peterson shooting Adamczak, but simply doing so in tandem with Knauss. Peterson has simply not demonstrated that the presumed "error affected the outcome of the lower court proceedings," and he certainly has not shown that the presumed error resulted in the conviction of "an actually innocent defendant" or seriously affected the fairness and integrity of the judicial proceedings. *Carines*, 460 Mich at 763. And with respect to the claim of ineffective assistance of counsel, Peterson has not shown "the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Carbin*, 463 Mich at 600. Indeed, in regard to the question of prejudice, Peterson merely contends in cursory fashion that the case hinged on Skrzycki's credibility and, therefore, allowing the testimony by Skrzycki's attorney was prejudicial. This woefully inadequate argument does not suffice to demonstrate the requisite prejudice. The jury was able to independently assess Skrzycki's credibility when she was on the stand and was instructed that it alone was tasked with making credibility determinations. Reversal is unwarranted.

B. ACCOMPLICE INSTRUCTION

M Crim JI 5.4 concerns witnesses who are undisputed accomplices, merely explaining to the jury why they are accomplices under the law, and if the instruction is applicable under the facts of the case, a trial judge is to proceed and also give the general cautionary instruction regarding accomplice testimony, M Crim JI 5.6. See Use Note to M Crim JI 5.4. M Crim JI 5.5 concerns witnesses who are disputed accomplices, describing for the jury the nature of actions that would make a witness an accomplice, asking for the jurors to determine whether the witness

---

discretion. However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo. Accordingly, when such preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law. [Citations omitted.]

at issue was indeed an accomplice, and instructing the jury to take into consideration the general cautionary instruction with respect to accomplices, M Crim JI 5.6, but only if the jury first finds under M Crim JI 5.5 that the witness was actually an accomplice.

Here, below, Peterson argued that Skrzycki was an undisputed accomplice, M Crim JI 5.4; therefore, the trial court should instruct the jury on the cautionary instruction, M Crim JI 5.6, in conjunction with M Crim JI 5.4. Peterson indicated to the trial court that the disputed accomplice instruction, M Crim JI 5.5, was not applicable. The trial court declined to instruct on either M Crim JI 5.4, 5.5, or 5.6. On appeal, Peterson contends that the trial court erred in not instructing the jury on M Crim JI 5.5 (disputed accomplices), considering that there was evidence that Skrzycki participated or assisted in the murder, i.e., her 2011 statements that she retrieved the rifle from Peterson's home, which was used to shoot Adamczak. However, Peterson waived this argument, where, as mentioned above, he asked for an instruction on M Crim JI 5.4 and affirmatively told the court that M Crim JI 5.5 was inapplicable. Accordingly, defendant's waiver extinguished any error. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

## C. RIGHT OF CONFRONTATION

Peterson next argues that the admission of certain testimonial statements made by Knauss to the police, which were heard by Peterson's jury, deprived him of his constitutional right to confrontation, as Knauss had exercised his Fifth Amendment right not to testify and the statements implicated Peterson in the murder. Peterson also maintains that trial counsel was ineffective for failing to object to the evidence.

Initially, we note that none of Knauss's formal statements to the police implicating Peterson were heard by Peterson's jury; his jury did not hear about Knauss's claims to police in which he asserted that Peterson shot Adamczak. Rather, Peterson complains in regard to testimony by officers that mentioned the fact that Knauss had made statements to the police or had been interviewed by police, which, in conjunction with other accompanying testimony by the officers, indirectly suggested or implied that Peterson was involved in the murder.

Our Supreme Court in *People v Nunley*, 491 Mich 686, 698; 821 NW2d 642 (2012), citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004), observed that "[t]he United States Supreme Court has held that the introduction of out-of-court testimonial statements violates the Confrontation Clause; thus, out-of-court testimonial statements are inadmissible unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant." "Statements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." *Crawford*, 541 US at 52. We have thoroughly reviewed the testimony cited by Peterson in support of his argument and conclude that none of the references to Knauss's statements to the police and surrounding testimony, as heard by the Peterson jury, facially, expressly, implicitly, or inferentially incriminated Peterson or implicated him in the murder; therefore, there was no Confrontation Clause violation. See *Richardson v Marsh*, 481 US 200, 206-208; 107 S Ct 1702; 95 L Ed 2d 176 (1987); *Bruton v United States*, 391 US 123, 135-136; 88 S Ct 1620; 20 L Ed 2d 476 (1968); *People v Frazier (After Remand),* 446 Mich 539, 544-550; 521 NW2d 291 (1994); *People v Banks,* 438 Mich 408, 414-421; 475 NW2d 769 (1991). On this unpreserved issue, we hold that

Peterson has failed to establish plain error. *Carines*, 460 Mich at 763-764. And assuming that Knauss's statements that linked the killing to Peterson's land can be viewed as giving rise to an inference that Knauss had informed the police that Peterson committed or was necessarily involved in the murder, the tenuous nature of the assumed correlation, along with the untainted evidence of guilt, render any error harmless, lacking prejudicial force. *Id.*[2] Given our ruling that there was no error or prejudice shown, Peterson's associated argument that counsel was ineffective for failing to object to the testimony also necessarily fails. *Carbin*, 463 Mich at 600; *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003) (counsel is not ineffective for failing to raise a futile objection).

## D. HEARSAY

Finally, Peterson contends that the trial court erred by allowing the admission of Knauss's nontestimonial statements made to various witnesses, where their testimony implicated Peterson in the murder and constituted unreliable hearsay. The trial court allowed the testimony under MRE 804(b)(3), which concerns unavailable declarants and provides:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In his appellate brief, Peterson argues that, "[a]s explained in *People v Taylor*, 482 Mich 368, 376[; 759 NW2d 361] (2008), a statement against penal interest may be admitted into evidence pursuant to MRE 804(b)(3) if the statement[] bear[s] sufficient indicia of reliability under the factors articulated in *People v Poole*, 444 Mich 151[; 506 NW2d 505] (1993)." This is not a correct statement of the law, given that *Taylor* partially overruled *Poole* in regard to situations like those posed in the instant case, where the final sentence of MRE 804(b)(3) (statement offered to exculpate accused) is not at issue, and where the statement is not only against the penal interests of the declarant, here Knauss, but is offered to inculpate the accused, here Peterson. *Taylor*, 482 Mich at 378 (observing that the United States Supreme Court in *Crawford* had overruled the precedent relied on in *Poole* and "[t]hus, the holding in *Poole* that a codefendant's nontestimonial statement is governed by *both* MRE 804(b)(3) and the

---

[2] The trial court did instruct Peterson's jury that it could consider Knauss's statements against Peterson, but it is clear to us that the statements intended to be covered by that instruction pertained to those statements made to persons other than police officers, which we address *infra*. To the extent that a juror may have perhaps considered the instruction in relation to Knauss's statements to police, reversal is still unwarranted, as the statements did not incriminate Peterson, i.e., they were not made "against" Peterson, or were so lacking in inculpatory character that prejudice cannot be shown.

Confrontation Clause is no longer good law"). The indicia-of-reliability test set forth in *Poole*, so as to protect the constitutional right of confrontation, was therefore eliminated by the *Taylor* Court in light of *Crawford* with respect to *nontestimonial* statements, leaving an analysis that only requires contemplation of the applicability of MRE 804(b)(3). *Taylor*, 482 Mich at 378 ("Accordingly, the admissibility of the statements . . . is governed solely by MRE 804(b)(3).").

There is no dispute that Knauss was "unavailable," MRE 804(a)(1), and there can be no dispute that the challenged statements made by Knauss and heard by the Peterson jury tended to, at the time of their making, subject Knauss to criminal liability, such that a reasonable person in Knauss's position would not have made the statements unless believing them to be true, MRE 804(b)(3). The question becomes whether those portions of the statements pertaining to and implicating Peterson are also encompassed by MRE 804(b)(3) because of the fact that the statements generally were against Knauss's penal interests.[3] Our Supreme Court in *Taylor* employed the same test set forth in *Poole*, asking whether the declarant's inculpation of his or her accomplice was made in the context of a "narrative of events," which narrative was against the declarant's penal interests. *Taylor*, 482 Mich at 379-380. The *Taylor* Court affirmed this Court's determination that the statements in dispute were admissible under MRE 804(b)(3), considering that the statements were provided in a narrative, with portions inculpating the declarant and portions inculpating the declarant's codefendants. *Id.* at 380.

Here, Knauss made nontestimonial statements to others that Peterson shot Adamczak, but only after Peterson had indicated that he would shoot Adamczak if Knauss agreed to dig the hole, to which Knauss agreed. Knauss also made statements that Peterson shot Adamczak and that Knauss helped bury and later burn Adamczak's body.[4] The portions of the statements that inculpated Knauss (against his penal interests) and those that inculpated Peterson were all part of a single narrative of events. Indeed, the two portions cannot stand alone, as the narrative would become nonsensical if a division were attempted. Accordingly, the trial court did not err in admitting Knauss's nontestimonial statements.

## II. DOCKET NO. 329200 – DEFENDANT KNAUSS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Knauss first argues that trial counsel was ineffective, given that he failed to offer a rational defense theory to the jury, failed to object to inadmissible and devastating evidence, failed to conduct effective cross-examination, and made bizarre and inappropriate comments to

---

[3] Peterson's argument on appeal focuses exclusively on the irrelevant issue regarding whether the statements had an indicia of reliability; there is no argument that tackles the applicability of MRE 804(b)(3). Accordingly, we need not go further; however, we shall proceed, as it is clear that MRE 804(b)(3) permitted admission of the statements.

[4] As indicated earlier, Knauss additionally made statements that he had killed Adamczak, which statements are not pertinent to this particular issue, given that they did not implicate Peterson in the murder.

the jury. Knauss contends that counsel's performance was so deficient that he was effectively absent from trial, thereby entitling Knauss to a new trial.

The trial court conducted a two-day *Ginther*[5] hearing on Knauss's motion for new trial, and it subsequently issued a 28-page written opinion that thoroughly and thoughtfully examined the claim of ineffective assistance of counsel. With respect to the trial court's conclusion that Knauss failed to establish the requisite prejudice and the reasons proffered by the court in support of that conclusion, we fully agree and adopt the court's ruling as our own. Accordingly, we hold that, assuming ineffective assistance of counsel, Knauss has not shown "the existence of a reasonable probability that, but for counsel's error[s], the result of the proceeding would have been different." *Carbin*, 463 Mich at 600. Reversal is unwarranted.

## B. PROSECUTORIAL MISCONDUCT

Knauss next maintains that the prosecutor committed misconduct throughout the trial, claiming numerous instances of misconduct. In *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007), this Court stated:

> Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [Citations and quotation marks omitted.]

Knauss first argues that the prosecutor engaged in misconduct by eliciting testimony of prior bad acts committed by Knauss, including abuse of family members, brawling, various criminal offenses, and violation of probation. He contends that the evidence was inadmissible under MRE 404(b)(1) and that, under MRE 404(b)(2), the prosecutor never provided the required pretrial notice as necessary to introduce the evidence. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70. And a prosecutor does not act in bad faith if evidence is arguably admissible. *Id.* "The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999).

We initially note that Knauss actually utilized the challenged evidence at trial, arguing that it showed that while Knauss was a brawler and had a tendency to get in trouble with the law, he was simply not a killer. Under these circumstances, a strong argument can be made that

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Knauss waived the issue below. *Carter*, 462 Mich at 215. Additionally, the issue of prior bad acts, and the failure to object to their introduction, formed part of the basis of Knauss's claim of ineffective assistance of counsel, which we rejected for failure to establish prejudice. Therefore, plain-error review likewise results in a failure to show the necessary prejudice. *Carines*, 460 Mich at 763. We find it unlikely that the evidence diverted the jury from an objective appraisal of Knauss's guilt or innocence in light of Knauss's many incriminating statements to acquaintances and the police.

Knauss also argues that the prosecutor improperly elicited "false" testimony from several witnesses who indicated that Skrzycki had accused Knauss of shooting Adamczak. Knauss complains that the challenged testimony was false because the prosecutor's theory was that Peterson had shot Adamczak. "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). Knauss's argument lacks merit. Skrzycki admitted at trial that she had previously claimed that Knauss shot Adamczak, and witnesses confirmed that she had made such statements. Even assuming that Skrzycki's prior statements were false, the trial testimony that she previously made such statements has not been shown to be false. Moreover, the testimony regarding Skrzycki's prior statements was not offered to prove that Knauss shot Adamczak. Rather, it was elicited as part of presenting the jury with a complete account of the police interrogations of Skrzycki, demonstrating that she had changed her story multiple times and ultimately recanted her assertion that Knauss had shot Adamczak. On this record, there was no false testimony, no prosecutorial misconduct, and no plain error.

Knauss next contends that the prosecutor made improper comments during voir dire by stating that "Confession is good for the soul" and "We don't speak lightly against ourselves." Viewed in context, the prosecutor was simply attempting to explore the jurors' abilities to weigh and consider the testimony relating to Knauss's statements and admissions, which seems at least somewhat relevant to a juror's capacity to serve as a fair and impartial juror. Knauss has failed to offer any argument or analysis with respect to why the prosecutor's remarks and line of inquiry were improper when viewed in context. Knauss fails to show misconduct and plain error affecting his substantial rights.

Knauss further argues that the prosecutor's comment that characterized the role of the prosecutor as "present[ing the evidence] and the role of the defense to argue[] his client's interest" improperly attacked the role of defense counsel. A prosecutor may not personally attack the credibility of defense counsel, or suggest that defense counsel is intentionally attempting to mislead the jury. *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996); *People v Dalessandro*, 165 Mich App 569, 580; 419 NW2d 609 (1988). The prosecutor merely advised the jurors that prosecutors do not and never convict, as that is the role of the jury. The prosecutor further explained:

> We all have a division of labor. We all have a role. I present. The defense argues his client's interests. And the judge gives law. It's not all centralized. There's like a division or authority or power that way. Your job as jurors is not to try to do other jobs, it's just to decide the facts of the case. Does that make sense to you?

Knauss has failed to explain how the above comments by the prosecutor "denigrated the defense." There was no prosecutorial misconduct and no plain error affecting Knauss's substantial rights.

Next, Knauss argues that the prosecutor vouched for the strength of the case when he argued, "I think and sincerely believe that we – that the evidence in the case has proven Robert Scott Knauss guilty." When viewed in context, which included the prosecutor stating that he would point to the evidence that backs his view, the prosecutor was not in any way personally vouching for Knauss's guilt. Because the prosecutor predicated his remarks on the evidence that was presented at trial, Knauss has not demonstrated a plain error.

Finally, Knauss maintains that the prosecutor improperly appealed for sympathy for Adamczak. "Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). To the extent that the prosecutor may have crossed a line with a few brief references, Knauss cannot show that it affected his substantial rights, resulted in the conviction of an actually innocent defendant, or seriously affected the fairness and integrity of the judicial proceedings. *Carines*, 460 Mich at 763.

## C. PRIOR BAD ACTS AND HEARSAY

Lastly, Knauss contends that the trial court erred by admitting testimony regarding multiple unrelated bad acts, as well as hearsay testimony that Knauss shot Adamczak. We have already effectively addressed and rejected the argument that introduction of Knauss's prior bad acts warrants reversal. And as to Knauss's assertion that the testimony indicating that Skrzycki had earlier told authorities that Knauss shot Adamczak constituted hearsay, the testimony was not admitted to prove the truth of the matter asserted, MRE 801(c), but to show the history of Skrzycki's statements to police, and Skrzycki testified that she had lied about her claim that Knauss shot Adamczak. Moreover, there was testimony that Knauss himself had made statements to others that he killed Adamczak. Reversal is unwarranted.

Affirmed.

/s/ Peter D. O'Connell
/s/ William B. Murphy
/s/ Kirsten Frank Kelly