*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARKO LACHARR MCGEE,

        Defendant-Appellant.

UNPUBLISHED
December 28, 2023

No. 363282
Calhoun Circuit Court
LC No. 2018-001869-FH

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of one count of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; one count of carrying a concealed weapon, MCL 750.227; and one count of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1).[1] Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 46 months to 25 years' imprisonment for his convictions of felon-in-possession, carrying a concealed weapon, and assaulting, resisting, or obstructing a police officer, and two years' imprisonment for each count of felony-firearm. For the reasons set forth in this opinion we affirm defendant's convictions.

## I. BACKGROUND

This case stems from an incident in which defendant's actions resulted in the death of the victim, Diabulo White. Expert testimony from Doctor Amanda Fisher-Hubbard, a forensic and neuropathologist, regarding the autopsy performed on White's body revealed that White died as a result of multiple injuries to his head and neck. Dr. Fisher-Hubbard testified that there were blunt force injuries to White's head and neck, indications of strangulation, and stab wounds to the neck.

---

[1] In lower court docket no. 2018-001868-FC, defendant was also convicted of one count of first-degree murder, MCL 750.316(1)(a). The trial court sentenced defendant to serve a life sentence without the possibility of parole for that conviction.

-1-

She also testified that White's hyoid bone, which is part of the neck structure, was fractured, which is commonly seen in cases of strangulation. There was a hemorrhage around the fracture, which indicated that White was alive when the bone was fractured.

According to defendant's testimony, in the early morning hours of Saturday, May 19, 2018, he opened his front door to let his dog out when he was confronted with an intruder standing in his doorway. According to defendant, the intruder, who was later identified as White, struck him with a gun, which caused the gun to discharge. Defendant and White began to struggle over the gun until White began to strike defendant with a different, blunt object, which turned out to be a hammer. Defendant and White both lost their grip on the gun, which caused it to fly out of both of their reaches, but defendant was able to gain control of the hammer. Defendant struck White twice with the hammer before he stopped moving. Defendant removed a mask White was wearing, revealing that the intruder was White. Defendant then moved White's car into his garage, loaded White's body into the trunk, doused the body in gasoline intending to burn it, and drove the car to White's neighborhood. Ultimately, defendant did not burn the body or the car and, instead, left it parked on private property from where it was subsequently towed.

White's body was discovered on May 21, 2018, by his girlfriend, who was the owner of the car, when she arrived at a tow yard to retrieve her car. The Battle Creek Police Department received an anonymous tip that defendant was the assailant and that he was unlawfully in possession of a firearm. After defendant attempted to flee from police, he was apprehended, and a gun was located in close proximity. Police interviewed defendant, who offered several different versions of the story before landing on the account that he testified about at trial. Eventually, defendant confessed to police that he had killed White in self-defense, put his body in the trunk of White's car and took the car to White's old neighborhood.

Relevant to this appeal, an evidentiary hearing was held on the third day of trial regarding the admissibility of a screenshot of a direct message on Facebook between Rochelle James, a woman who shared a child with White, and Daleeka Daniels, defendant's biological daughter. The Facebook message stated:

> Im trying cuz i just rolled up now trying to clear my head and they said marko did it and dee told me Friday at 2 he was laying on him and he was about to kill him thats the last time i talked to dee he said that then he was with marko a little after 2 and that was the last time he was seen alive[.]
>
> They arrested marko and some young [n***a] with dreads they did that they caught my baby slipping but he got a shot off on one of them not sure who but someone got shot dee aint no hoe and he wasn't going out without a fight[.]

At the evidentiary hearing, James testified that Daniels, her cousin, reached out to her via Facebook after hearing what happened to White. James responded with the above-quoted message, but she testified that the information in the message was not from her personal knowledge, rather actually something that she "heard in the streets" and from family and friends. James explained that she was angry that her child's father was murdered and, therefore, repeated information that she heard in the streets. James clarified that the message was a lie because White

never told her what was said in the message. At the end of the evidentiary hearing, the trial court informed defense counsel that he could call James as a witness the following day and she would be permitted to testify that she sent the message to Daniels; however, the trial court maintained that defense counsel would be required to lay a proper foundation for the evidence to avoid a hearsay issue.

On the fourth day of trial, James was not called as a witness because of a conflict with her work schedule. Therefore, the parties stipulated that, if James were called, "her testimony would be to confirm the information provided by Detective VanDyke, that Ms. James sent a Facebook Messenger message to Ms. Daniels." Battle Creek Police Department Detective Jamie VanDyke's testimony regarding the Facebook message detailed that James reached out to her with information pertaining to the case and provided her with a screenshot of the Facebook message. Detective VanDyke testified that the information in the message "had not been substantiated by the evidence of the case," however, she did agree that the information in the screenshot "paired with" defendant's claim during his interview that White's attack was planned.

Next, the trial court made its conclusive ruling on the admissibility of the screenshot, stating:

> In the meantime, I would indicate that we've had many discussions regarding the admissibility of the Facebook message screenshot.
>
> I've had a chance to review it, I've looked at the applicable case law, and I've also heard the testimony of Ms. James that was done in a quick evidentiary hearing, outside the presence of the jury, yesterday. And based upon her answers and the information that that was based simply upon word on the street or information she had heard on the streets, I cannot find any exception to the hearsay rule that would allow that information to be admissible, nor can I find, even in the catch all exception, that that information would have any type of reliability.

Defense counsel objected to the trial court's ruling, arguing that "[t]here can't be anything on more fours with 803(3), than that, motive, intent, plan, scheme." Defense counsel stated that White's intent and motive were clear in the message.

Also relevant to this appeal was the prosecution's method of proving beyond a reasonable doubt defendant's ineligibility to possess a firearm because of his prior felony conviction. At the time of his arrest, defendant had four felony convictions: (1) attempted malicious destruction of property over $100, MCL 750.377a, from 1992; (2) carrying a concealed weapon, MCL 750.227, from 1994; (3) assault with intent to do great bodily harm less than murder, MCL 750.84, from 1994; and (4) assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), from 2012. In establishing defendant's guilt for the charge of felon-in-possession, the prosecution focused on defendant's conviction of assault with intent to do great bodily harm less than murder from 1994. The prosecution mentioned this conviction in its opening statement, stating that defendant could not be in possession of a firearm because of his prior felony of assault with intent to do great bodily harm less than murder. During trial, the prosecution had Detective Sutherland read a felony-conviction form for defendant and state the felony charged, which was assault with intent to do great bodily harm less than murder. The prosecution brought up the conviction again during its

cross-examination of defendant, asking defendant if he was convicted of assault with intent to do great bodily harm less than murder, to which defendant testified he pleaded guilty to the charge in 1994. The prosecution mentioned the conviction a final time during its closing arguments, indicating that defendant's conviction of assault with intent to do great bodily harm less than murder rendered him ineligible to possess a firearm. None of the other felonies were mentioned by the prosecution.

Following trial, defendant was convicted and sentenced as stated above. This appeal followed.

## II. ANALYSIS

On appeal, defendant first argues that the trial court abused its discretion when it excluded the contents of the Facebook message from evidence. As previously stated, the trial court held that the Facebook message constituted inadmissible hearsay and could not be admitted as a then-existing state of mind under MRE 803(3) or as a prior inconsistent statement under MRE 613.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). Under this standard, "[a] trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). A preserved error in the admission or exclusion of evidence is reversed only if that error affected a defendant's substantial rights. MRE 103(a). Therefore, "a defendant must persuade the reviewing court that it is more probable than not that the error in question was outcome determinative." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). "An error is outcome determinative if it undermined the reliability of the verdict." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted).

The prosecution argues that defendant waived this issue by agreeing to the stipulation regarding James's testimony. Waiver is the "intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). A waiver "extinguishes any error"; therefore, once an error is waived, appellate review of that error is unavailable. *Id*. The prosecution argues that, because the trial court permitted James to be called as a witness, and afterward, the parties stipulated as to what her testimony would be in lieu of her testifying before the jury, defendant waived any error regarding the admissibility of the Facebook message.

Although defense counsel expressly approved the stipulation, the stipulation did not concern the content or admissibility of the Facebook message. Rather, the stipulation only pertained to James's testimony. Therefore, because defense counsel did not expressly approve of the trial court's ruling that the Facebook message was inadmissible, the stipulation does not have any bearing on this issue on appeal. Accordingly, the issue was not waived.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "The admission of hearsay evidence is disfavored because it is difficult, if not impossible, for the trier of fact to assess the reliability of hearsay statements or of the hearsay declarant." *People v Dhue*,

444 Mich 151, 160; 506 NW2d 505 (1993). For that reason, "[h]earsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). MRE 803(3) provides an exception to the exclusion of hearsay evidence for statements concerning a declarant's "[t]hen existing mental, emotional, or physical condition." MRE 803(3) states:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

A statement that is indicative of a declarant's state of mind is admissible under this rule only when the state of mind of the declarant is at issue in the case. *People v DeWitt*, 173 Mich App 261, 268; 433 NW2d 325 (1988).

After the trial court made its ruling on the admissibility of the Facebook message under MRE 803(3), defense counsel objected, arguing that White's intent and motive were both clearly present in the message through the language stating that White was "laying on" defendant and was "about to kill him." However, MRE 803(3) concerns the then-existing state of mind of the *declarant*, who, in this case, was James, not White. Therefore, MRE 803(3) is not applicable to the message, even if the message tends to show White's state of mind.

Additionally, at the evidentiary hearing, James testified that White did not tell her the information in the message; rather, she heard the information "in the streets" and from family and friends. This testimony called into question the reliability of both the content of the message and the declarant. The exceptions to the hearsay rule, which developed out of the unreliability of hearsay evidence, "allow the admission of hearsay statements where the circumstances indicate that, unlike general hearsay statements, [the] statements may be presumed to be reliable." *Dhue*, 444 Mich at 160. The unreliability of the message in this case only further underscores why the trial court did not abuse its discretion when it ruled that the message was not admissible under MRE 803(3). Therefore, because defendant failed to show error by the trial court, we need not reach a harmless-error analysis.

Defendant also argues that the Facebook message was admissible as a prior inconsistent statement to impeach James pursuant to MRE 613.

A prior inconsistent statement of a witness is admissible for impeachment purposes. See *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002). This is codified in MRE 613, which states:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Unlike hearsay evidence, "[t]he purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *People*

*v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). Additionally, [w]hen a party attempts to impeach a witness . . . with a prior inconsistent statement made by that witness, a proper foundation must be laid by questioning the witness concerning the time and place of the statement and the person to whom it was allegedly made." *Rodriguez*, 251 Mich App at 34.

It is important to note that the trial court did not exclude the Facebook message on the basis that it could not be used to impeach James. Rather, the trial court explicitly allowed defense counsel to call James as a witness and use the message to impeach her if she made a statement inconsistent with the message. The trial court only stated that the actual content of the message was inadmissible because it was hearsay without an exception. The parties then, in lieu of having James testify, stipulated as to her testimony. By failing to call James as a witness, defendant failed to establish a proper foundation to support his conclusion that James would have testified inconsistently with the Facebook message. Therefore, defendant's contention that he could have used the message to impeach James was merely theoretical. Accordingly, defendant has failed to demonstrate error here as the record reveals that the trial court did not reject the introduction of the message for impeachment purposes.

Defendant also argues that the prosecution's repeated mention of his prior conviction of assault with intent to do great bodily harm less than murder constituted prosecutorial misconduct that denied him his due-process right to a fair and impartial trial.

We review a claim of prosecutorial misconduct "de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). However, "unpreserved claims of prosecutorial misconduct are reviewed for plain error." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). "In order to avoid forfeiture of an unpreserved claim, the defendant must demonstrate plain error that was outcome determinative." *Id*. Reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity[,] or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citation omitted; first alteration in original).

"A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). A defendant's right to a fair trial can be denied when a prosecutor makes improper remarks that "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Id*.; see also *Darden v Wainwright*, 477 US 168, 181; 106 S Ct 2464; 91 L Ed 2d 144 (1986). We evaluate "instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Lane*, 308 Mich App at 62-63.

"The burden of proving beyond a reasonable doubt each and every element within the definition of the crime charged remains steadfastly on the shoulders of the prosecution." *People v Mette*, 243 Mich App 318, 330; 621 NW2d 713 (2000). Therefore, the prosecution "is free to argue the evidence and all reasonable inferences arising from it as they relate to [its] theory of the case." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Further, the prosecution

need not state its inferences in the blandest possible terms, *id*., or use the least prejudicial evidence available to establish a fact at issue, *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995).

Defendant was charged with felon-in-possession under MCL 750.224f(2), which states that "[a] person convicted of a *specified felony* shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm . . . " (Emphasis added.) MCL 750.224f(10) defines "specified felony" as a felony in which one or more of the following circumstances exist:

(a) An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

(b) An element of that felony is the unlawful manufacture, possession, importation, exportation, distribution, or dispensing of a controlled substance.

(c) An element of that felony is the unlawful possession or distribution of a firearm.

(d) An element of that felony is the unlawful use of an explosive.

(e) The felony is burglary of an occupied dwelling, or breaking and entering an occupied dwelling, or arson.

Because defendant's conviction of a specified felony was an element of the felon-in-possession charge, the prosecution was required to prove the element beyond a reasonable doubt. See *Mette*, 243 Mich App at 330. The prosecution chose to prove this element by introducing evidence of defendant's conviction of assault with intent to do great bodily harm less than murder. The assault element of this crime satisfies the specified felony element of MCL 750.224f(10) because it involves the use of physical force against a person. Therefore, defendant's prior conviction of assault with intent to do great bodily harm less than murder satisfied one element of his felon-in-possession charge. On appeal, defendant argues that the prosecution's decision to use this felony, as opposed to the other three felonies that he was previously convicted of, constituted prosecutorial misconduct that denied him his due-process right to a fair trial.

As previously stated, defendant's other prior felony convictions were: (1) attempted malicious destruction of property over $100, MCL 750.377a, from 1992; (2) carrying a concealed weapon, MCL 750.227, from 1994; and (3) assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), from 2012. An individual is guilty of attempted malicious destruction of property if he or she attempts to "willfully and maliciously destroy[] or injure[] the personal property of another." MCL 750.377a(1). The elements of this crime satisfy the requirements of a specified felony under MCL 750.224f(2) because an element of the felony is the attempted use of physical force against the property of another. An individual is guilty of carrying a concealed weapon if he or she carries a "dagger, dirk, stiletto, a double-edged nonfolding stabbing instrument of any length," or a pistol that is concealed on their person or in their car. MCL 750.227. It is unclear if defendant was convicted of carrying a pistol or a different dangerous weapon. Regardless, it does not appear as though this conviction satisfies the requirements of a specified

-7-

felony under MCL 750.224f(2) because the unlawful possession of a firearm is not an element of the crime. Lastly, an individual is guilty of assaulting, resisting, or obstructing a police officer if that individual "assaults, batters, wounds, resists, obstructs, opposes, or endangers" a police officer whom the individual knows or has reason to know is performing his or her duties. MCL 750.81d(1). This conviction satisfies the specified felony element under MCL 750.224f(2) because it involves the use of physical force against a person. Therefore, defendant had two prior convictions other than his conviction of assault with intent to do great bodily harm less than murder that could have satisfied the specified felony element of MCL 750.224f(2). This does not, however, automatically render the prosecution's choice to focus on defendant's prior conviction of assault with intent to do great bodily harm less than murder prosecutorial misconduct.

In establishing defendant's guilt for the charge of felon-in-possession, the prosecution mentioned defendant's conviction of assault with intent to do great bodily harm less than murder in its opening statement and closing, indicating that this conviction rendered defendant ineligible to possess a firearm. Further, during trial, Detective Tyler Sutherland, at the request of the prosecutor, read a felony-conviction form for defendant and stated the felony charged, which was assault with intent to do great bodily harm less than murder. The prosecution brought up the conviction again during its cross-examination of defendant, asking defendant if he was convicted of assault with intent to do great bodily harm less than murder, to which defendant testified he pleaded guilty to the charge in 1994.

During each of these mentions of defendant's prior conviction, the prosecution did not comment on the specific felony that defendant was convicted of, nor did the prosecution characterize defendant as a violent person based on this prior conviction.

Further, defense counsel failed to object to the prosecution's mention of this prior conviction and request a curative instruction, which could have alleviated any prejudicial effect that mention of the conviction had. This is significant because this Court has held that we "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). Defense counsel also could have stipulated with the prosecution that the specified felony element of the felon-in-possession charge was satisfied, which could have precluded testimony about defendant's prior conviction of assault with intent to do great bodily harm less than murder. The defense counsel's failure to take these actions does not, as defendant suggests, render the prosecution's mention of the conviction prosecutorial misconduct.

Accordingly, the prosecution did not commit prosecutorial misconduct when it mentioned defendant's prior conviction of assault with intent to do great bodily harm less than murder in the context of proving the specified felony element of his felon-in-possession charge beyond a reasonable doubt.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel

-8-